IiARMSTRONG, Judge.
Defendant, Lloyd J. Martin, and a co-defendant, Kedrick Byes, were charged by bill of information on November 28, 1995, in count one, with distribution of (crack) cocaine. Defendant was additionally charged in the same bill of information, in count two, with possession with intent to distribute (crack) cocaine. All offenses were violations of La. R.S. 40:967. Defendant was arraigned on January 31, 1996, at which time he pleaded not guilty as to both counts. On March 1, 1996, the court found probable cause for arrest and denied defendants’ motion to suppress the evidence. On May 8, 1996, following trial by a twelve-person jury, defendant was found not guilty as to count one and guilty of attempted possession of cocaine as to count two.[1] On January 31,1997, the trial court denied ^defendant’s motion for new trial and, after defendant waived legal delays, sentenced him to serve twenty months at hard labor. The State then filed a bill of information charging defendant as a third-felony habitual offender. Defendant admitted the prior convictions; the trial court vacated the original sentence and sentenced defendant to serve twenty months at hard labor. Defendant immediately filed an oral motion for appeal which was granted by the trial court
The record reflects that New Orleans Police Detective Othello Thomas testified he was working undercover on November 28, 1995 and, as he drove up Tullis Street at approximately 4:50 p.m., was flagged down by Kedrick Byes. Det. Thomas gave Byes marked money. Byes then paged someone, and a Chevrolet Blazer pulled up. Byes got in the vehicle, exited, and came back to Det. Thomas’ vehicle and gave him a piece of crack cocaine. Detective Reginald Jacques testified that he observed the Blazer pull up, Byes get in and out, and the Blazer drive away. He said the Blazer made a u-turn and stopped in front of an apartment complex where a black female entered the vehicle. He then saw other officers move in and arrest the person in the vehicle.
Officer Anthony Micheu was a member of the “take-down team” which approached the Blazer after the sale to Det. Thomas. He got there after other officers and said the defendant, Lloyd Martin, was in the driver’s seat. Officer Micheu retrieved an amber-colored pill bottle containing sixteen pieces of crack cocaine from the console between the seats. Officer Marcel Foxworth, also a member of the take-down team, testified concerning a black female who appeared to be exiting the Blazer. The Blazer was stopped in front of her apartment when police ap *1023 proached. Police eventually searched her apartment after she consented.
Leona Brown testified for the defense and stated that she came upon the bscene of the defendant’s arrest. Ms. Brown knew the defendant and the black female involved, and she witnessed police entering an apartment with the female in handcuffs. Ms Brown testified that she observed a plainclothes police officer come out of the apartment holding an amber-colored pill bottle. She testified the bottle looked like the one identified as having been recovered from the defendant’s vehicle by police. Ms. Brown said that the officer holding the pill bottle stated to other officers: “We got it.”
Trauline Tolliver also testified that she was at the scene of the defendant’s arrest. She also observed police take the black female into an apartment and saw an officer in plain clothes emerge from the apartment holding up a brown bottle. She said she had been to the defendant’s residence as recently as a few weeks before the arrest in question. Ms. Tolliver admitted to having dated the defendant and having lived with him for about a year at his previous residence. She further admitted to having been arrested inside of the defendant’s prior residence on two separate occasions, once for possession with intent to distribute cocaine and once for possession of cocaine, and to having pleaded guilty to those offenses. A third witness who knew the defendant, Eldrine Carroll, also testified that on the day of the arrest she saw a police officer coming out of an alley with a pill bottle in his hand. She said it looked like the one allegedly recovered by Officer Mi-cheu from defendant’s Blazer. The defendant’s daughter, Tracy Reid, testified that she went to the scene of the arrest. She said that, after police went into the black female’s apartment, she saw a police officer holding up a medicine vial similar to the one in evidence, Anthony Lee, Tracy Reid’s boyfriend, testified that he went to the scene of the arrest with Ms. Reid and saw a female in handcuffs and saw police go into an apartment. Lee admitted he had been convicted for distribution of PCP.
TERRORS PATENT:
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR NO. 1:
The defendant contends that the trial court erred in overruling his objection to the admission of evidence of other crimes and in denying his motion for a new trial based on the State’s elicitation of, and comment on, that evidence.
Part of the alleged other crimes evidence was the testimony by Trauline Tolliver admitting she had been arrested at the defendant’s residence for possession of, and possession with the intent to distribute, cocaine. Ms. Tolliver had just testified on direct examination that she saw a police officer come out of an apartment holding up a brown pill bottle which she said looked like the one which had already been identified as having been seized by police from the defendant’s vehicle. On cross-examination, the prosecutor was questioning Ms. Tolliver about the defendant, attempting to show bias in his favor.
Q Do you know a Mr. Lloyd Martin?
A Yes.
Q How do you know him?
A From the neighborhood. I told you, me and his daughter went to school together. Just from living in the neighborhood.
Q Are you personal friends with Mr. Lloyd Martin?
A No, I’m not, not now.
Q Have you ever — What is your relationship with Mr. Lloyd Martin?
A He’s a friend from the neighborhood.
Q Have you ever dated him?
A Some years ago.
Q How many years ago?
A About four. About five years ago.
Q Have you ever lived with him?
A Yes.
Q Have you ever been to his house at 5931 Tullís Drive?
A Yes.
Q And when was that?
A A few weeks before the incident on N ovember fe28th.
*1024 Q A few weeks before the date he was arrested, right?
A Yes.
[[Image here]]
Q Had you ever been to his house at 3651 Lancaster?
A Yes. Some years ago.
Q And did you live with him there?
A Yes.
Q How long did y’all [sic] live together? A About a year.
Q Did y’all [sic] have any children together?
A No.
Q Were you at his house on May 28, 1991?
A I’m not sure.
Q Do you deny being on that day?
A No, I don’t deny it.
Q Isn’t it a fact that you had cocaine in your possession while at his house on that day?
A Yes, its true. Wait. I’m not sure if that was — if it was that day I was there.
Q But back in 1991, your were, in fact, at Mr. Martin’s house and you yourself had cocaine in your possession and you possessed it with the intent to distribute it; isn’t that correct?
A Yes.
Q And, in fact, you pled guilty to that, didn’t you?
A Yes I did.
Q And you got probation for that, didn’t you?
A Yes.
Q Isn’t it a fact that you were also at the same place on Lancaster Street on April 23, 1991 and you had cocaine in your possession on that day also?
A I’m not exactly sure about the date but when I was arrested, yes. I was arrested there.
Q And that was another date?
A Yes.
Q And that was at this man right here’s house, Mr. Lloyd Martin?
A Yes.
Q And you pled guilty to that and got probation for it, didn’t you?
A Yes, I did.
The defendant complains the evidence was inadmissible as other crimes evidence under La. C.E. art. 404(B)(1) and also was inadmissible because the State failed to give proper notice of its intent to use such evidence as required by La. IgC.C.r.P. art. 720.
Defense counsel failed to contemporaneously object to the elicitation/introduction of this evidence. A defendant is precluded from raising on appeal any error which he failed to object to at the time of occurrence. La.C.Cr.P. art. 841(A); State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, writs denied, 97-1050, 97-1255 (La.10/13/97), 703 So.2d 609, 612. In State v. Pendleton, 96-367, 97-206 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450, the State introduced into evidence the defendant’s videotaped confession in which he admitted committing at least one crime besides the one for which he was being tried. On appeal, the defendant argued it was error to admit the tape because it contained impermissible evidence of other crimes and the State failed to comply with the notice requirements of La.C.Cr.P. art. 720.[2] The court held that defense counsel failed tq object at trial to the admission of the videotape and, thus, the defendant could not raise the issue on appeal. 96-367, 97-206 at p. 12-13 (La.App. 5 Cir. 5/28/97), 696 So.2d at 152.
Because the defendant failed to object to the elicitation of the testimony from Ms. Tolliver about being arrested at the defendant’s residence, he is precluded from raising that issue on appeal. Moreover, even assuming defense counsel had contemporaneously objected to this testimony, it was not evidence of other crimes. La. C.E. art 404(B)(1) provides in pertinent part:
*1025 Except as provided in Article 412 [concerning evidence in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.
The prohibition against evidence of other crimes has no application to other crimes committed by third parties. State v. Joseph, 96-187, p. 8 (La.App. 5 Cir. 11/14/96), 685 So.2d 237, 242, writ granted in part; denied in part; remanded, 96-2998 (La.5/9/97), 693 So.2d 782; State v. Johnson, 529 So.2d 142 (La.App. 4 Cir.1988), writ denied, 535 So.2d 740 (La.1989). The evidence as to Ms. Tolliver’s crimes was not evidence of any crime committed by the defendant and, thus, its admission into evidence was not barred by La. C.E. art. 404(B)(1) and State v. Prieur, 277 So.2d 126 (La.1973).
La. C.E. art. 609.1(C) provides, in pertinent part:
Ordinarily, only the fact of the conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
[[Image here]]
In the instant case, Ms. Tolliver did not deny her previous convictions or the recollection thereof. However, La. C.E. art. 607(D)(1) provides that:
Extrinsic evidence to show a witness’s bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
The probative value of the evidence should not be substantially outweighed by the danger of unfair prejudice. La. C.E. 403. In the instant case, the defendant was being tried for distribution of one piece of crack cocaine and for possession with the intent to distribute the sixteen pieces of crack cocaine contained in the amber bottle allegedly recovered from his vehicle. The thrust of Ms. Tolliver’s testimony was that this bottle was not seized from the defendant’s vehicle as claimed by police, but was taken from the apartment of the black female who was standing inside of the door of the defendant’s vehicle when police descended upon it. Ms. Tolliver’s testimony concerning her relationship with the defendant was evasive; feshe first stated she knew him only “from the neighborhood” and through his daughter. She later admitted she had lived with the defendant, and admitted her two previous arrests and convictions. However, by bringing out that the witness not only had two cocaine convictions, but had been arrested for those offenses at the residence of the defendant, the State was attempting to destroy any shred of credibility the witness had. Simply bringing out the fact and date of her arrests and convictions would not have accomplished this goal. The considerable probative value of this evidence outweighed any possible prejudicial effect.
The defendant also complains that the State revisited this subject during its closing argument, stating:
MR. MONISTERE:
She said, “I know him from the area.” She didn’t say, “I’ve dated him, I’ve lived with him.” She didn’t say any of that. “I know him from the area.” “Well were you at his house on” — a specific date in 1991. Two different dates. I asked her specific dates. She said, “Well, I can’t remember the date.” “Did you possess cocaine with the intent to distribute while at his house?” “Yes.” “Did you plead guilty to that?” ‘Tes.” While at his house. “Did you get probation for that?” ‘Tes.” “Were you at his house on another date when you had —
MR. WAINWRIGHT:
Your Honor —
MR. MONISTERE:
— cocaine in your possession?”
MR. WAINWRIGHT:
— excuse me. Objection. The First Amendment guilt by association, is not applicable in the United States.
THE COURT:
All right, again, this is his argument. I would overrule this objection.
*1026 You’ve got less than five minutes, Mr. Monistere.
MR. MONISTERE:
“Were you at his house” on another date “and had possession in your — cocaine in your possession?” “Yes.” At his house. “Did you plead guilty to that?” “Yes,” “Did you get probation?” “Yes.”
bYou also heard from Mr. Anthony Lee who sees — who’s the boyfriend of his daughter. Birds of a feather flock together. You know that old saying —
MR. WAINWRIGHT:
Objection. The First Amendment, guilt by association does not apply —
MR. MONISTERE:
— my grandfather said it, God rest his soul.
MR. WAINWRIGHT:
— in the United States, your Honor.
MR. MONISTERE:
Birds of a feather flock together.
THE COURT:
Wait, wait, wait, when he objects, please. All right, again, I would overrule the objection. This is argument.
As to any comments about Ms. Tolliver’s testimony, because the defendant failed to contemporaneously object to the admissibility of that testimony, it was properly admitted into evidence, and the prosecutor was entitled to refer to it in his closing argument. La.C.Cr.P. art. 774[3]; State v. Pendleton, 96-367, 97-206 at p. 12-13 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 152. Further, for the reasons discussed above, the testimony elicited from Ms. Tolliver was not inadmissible other crimes evidence under La. C.E. art. 404(B)(1), but was admissible to attack her credibility. For that reason also, the prosecutor could comment on the evidence during his closing argument. La.C.Cr. P. art. 774.
Insofar as the prosecutor referred to “birds of a feather” flocking together, it appears the prosecutor was attacking the credibility of those other witnesses whose testimony indicated that police recovered the amber bottle containing the sixteen pieces of cocaine from the apartment of the black female, not from the defendant’s vehicle. As to the prosecutor’s reference to Anthony Lee, the boyfriend of defendant’s daughter, he too had his credibility properly attacked on _Jcross-i0examination by reference to his conviction for distribution of POP. The prosecutor’s “birds of a feather” reference as to him appears to have been an attack on Mr. Lee’s credibility and, again, possibly the credibility of other witnesses. Mr. Lee’s testimony supported Ms. Reid’s testimony insofar as he said they both went to the scene of the arrest and, thus, that Ms. Reid was there to see a police officer holding up a medicine vial as she claimed.
The defendant cites State v. Cook, 590 So.2d 720 (La.App. 3 Cir.1991), for the proposition that the prosecutor was impermissibly using a “guilt by association” argument regarding both Ms. Tolliver and Mr. Lee’s testimony. In Cook, two brothers were being tried for attempted first degree murder. Both had also been charged with attempted second degree murder in an unrelated case. Prior to trial, the State was instructed not to introduce evidence of the attempted second degree murder charge. During the examination of a police officer, the State elicited testimony concerning an arrest warrant for one of the brothers for the attempted second degree murder charge. The defense moved for a mistrial which the trial court denied. On appeal, the court found that, not only was the brother directly referred to prejudiced, but the other brother was also substantially prejudiced through guilt by association because other evidence at trial established that the brothers had sold drugs together and both had shot at a police officer.
Cook is not applicable to the facts of the instant case because Ms. Tolliver was not a co-defendant of the defendant. Neither was there any evidence the defendant and Ms. Tolliver were involved in any drug transactions or drug use together.
*1027 Following trial, defense counsel filed a motion for a new trial. For the reasons discussed above, the evidence complained of was admissible, and the trial court did not err in overruling defense counsel’s objection during closing argument [uor in denying the defendant’s motion for a new trial based on the admission of such alleged inadmissible evidence and errors.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2 :

The defendant next argues that he received ineffective assistance of counsel because his trial counsel failed to move for a mistrial when the State intentionally elicited and referred to the other crimes evidence.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir. 1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced bthe defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir. 1992).
In the instant case, the record discloses sufficient evidence to rule on the merits of the defendant’s claim of ineffective assistance of counsel. Upon motion of a defendant, a mistrial shall be ordered when a prosecutor’s comments, made within the hearing of the jury, refer to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, or when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. La.C.Cr.P. arts. 770, 775.
The defendant’s argument as to this assignment of error rests on the following assumptions: (1) that the evidence complained of was improperly elicited from Ms. Tolliver; (2) that such evidence was improperly referred to by the prosecutor during his closing argument; and (3) that the prosecutor im-permissibly referred to other crimes committed by the defendant during his closing argument by reference to “birds of a feather” flocking together.
As previously discussed in Assignment of Error No. I, the evidence complained of was admissible; the prosecutor had the right to refer to the evidence during his closing argument; and the prosecutor did not refer to other crimes committed by the defendant, or unduly prejudice him, by his use of the “birds of a feather” argument.
^Accordingly, there was no basis for a mistrial. Therefore, the defendant’s trial counsel could not have been deficient in failing to move for a mistrial. There is no merit to this assignment of error.
*1028 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

Affirmed.

. Co-defendant, Kedrick Byes, pleaded guilty as charged on May 6, 1996, and was subsequently sentenced as a third-felony habitual offender to serve twelve years at hard labor.

. La.C.Cr.P. art. 720 requires the State, on motion of the defendant, to inform the defendant of its intent to offer evidence of the commission of any other crime which is admissible under La. C.E. art. 404.

. La.C.Cr.P. art. 774 provides in pertinent part:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.